CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
3/28/2019
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KYLE E. ALMOND & LYNN P. ALMOND,<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD D. JONES & CO., L.P.,<br><br>Defendant. | Civil Action No.: 5:18-cv-00046<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Plaintiffs Kyle and Lynn Almond bring this action against Edward D. Jones & Co., L.P. (Edward Jones). Plaintiffs assert various claims arising from defendant's alleged securities fraud.

Before the court is defendant's motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 9.) In it, defendant argues that many of plaintiffs' claims are barred by the applicable statute of limitations or repose, and that others fail to state a claim. The matter has been fully briefed and argued. For the reasons set forth below, the court will grant defendant's motion to dismiss.

I. BACKGROUND[1]

The Almonds make several allegations against Edward Jones in its capacity as a principal for Dawkins, an agent who "was acting within the ordinary course of the business and the apparent authority for which he was an agent." (Compl. ¶ 23, Dkt. No. 1.) The Almonds allege

---

[1] The court considers documents extrinsic to the pleadings and attached by the parties as exhibits because the parties agree that the authenticity is unchallenged and the documents are "integral to and explicitly relied on in the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). The only document not considered is the FINRA award because defendant objects to its consideration and the document is not necessary to the court's ruling.

violations of the Virginia Securities Act, federal securities fraud, common law fraud, constructive fraud, unsuitability (under law, insurance regulations, and Financial Industry Regulatory Authority (FINRA) conduct rules), negligence, negligent supervision, breach of fiduciary duty, and breach of contract. (Compl. ¶¶ 25–76.)

Plaintiffs allege that, in 2007, they met with Hardy Dawkins, a registered securities representative and advisor with Edward Jones, to discuss investing $425,000 for their retirement. Per Dawkins's recommendation, the Almonds invested in a Hartford variable annuity. Dawkins told them "that they would receive $1,726.00 a month for the rest of their lives from the annuity, and if either one died, the other would continue to receive the $1,726.00 a month." (Compl. ¶ 6–7.) The annuity application is dated December 2006, and it contained two options for a rider–a "Single Life" and a "Joint/Spousal." (Request for Variable Annuity, Ex. C, Dkt. No. 9-2.) The application noted that only one option could be selected and that the prospectus should be consulted for details. (*Id.*) Mr. Almond selected, in section 7, "The Hartford's Lifetime Income Builder II – Single Life." He also selected "The Hartford's Lifetime Income Builder" on another line. (*Id.*) Mr. Almond signed an election form stating that he received the prospectus. (Optional Guaranteed Withdrawal Benefit Rider Election Form, Ex. D, Dkt. No. 9-2.)

In January 2007, Mr. Almond completed another application selecting only "The Hartford's Lifetime Income Builder II – Single Life." (Request for Variable Annuity, Ex. F, Dkt. No. 9-2.) Plaintiffs allege that, after receiving initial documents for the annuity in February 2007, Mr. Almond emailed Dawkins on February 2 to ask about the reference to "Single" in the annuity and to confirm they would receive $1,726 as long as he lives and that, when he dies, Lynn would receive at least $1,726 as long as she lives. In handwritten notation under the body of this email, Mr. Almond wrote "Hardy's answer to [his] first email" to be "1770 min for me

2

and same amt for Lynn." (Compl. ¶ 8; February 2 Email, Ex. 1, Dkt. No. 1-2.)

On February 27, 2007, Mr. Almond emailed Dawkins again to ask about a benefit statement he received for the annuity. He pointed out to Dawkins that "the big awful word 'SINGLE' is still coming out on the form" and asked for "confirmation that this will run for Lynn [for] her lifetime after [his] at no less than the $ 1770 [they] discussed." (February 27 Email, Ex. 2, Dkt. No. 1-3.) Edward Jones claims it did not receive this email in 2007, and it appears that it was sent to a different email address (hardy.dawkins v. hardydawkins). (*Id.*; Compl. ¶ 10.)

In any event, defendant issued a new policy, either in response to Mr. Almond's concerns (per plaintiffs) or to correct it from Income Builder to Income Builder II (per defendant), and Dawkins sent a handwritten letter to Mr. Almond on February 28, 2007, in which he stated: "Here's the revised annuity contract from Hartford. Looks like they got it right this time!" (Dawkins Letter, Ex. 3, Dkt. No. 1-4.) After the Almonds received the revised annuity and this letter, they met with Dawkins. In their meeting, Dawkins "confirmed his prior statements that the annuity would pay the minimum amount through both lifetimes." (Compl. ¶ 11.)

On March 5, 2007, Mr. Almond signed an acknowledgement of receipt of his policy. (Delivery Receipt, Ex. G, Dkt. No. 9-2.) The effective date of the contract is January 29, 2007, and Mr. Almond is listed as the annuitant, with no contingent annuitant. (Annuity Contract Summary, Ex. E at 49,[2] Dkt. No. 9-2) Moreover, the contract includes a rider entitled, "Lifetime Income Builder II Rider (Single Life)." (Variable Annuity Contract, Ex. E at 87, Dkt. No. 9-2.) Mr. Almond began receiving quarterly statements, listing him as the owner and annuitant, and noting his election of "Lifetime Income Builder II sngl." (Variable Annuity Quarterly

---

[2] The page numbers cited are those pages numbers supplied by the court upon docketing, so, in this case, page 49 of 123.

Statement, Ex. H at 102, Dkt. No. 9-2.)

In November 2011, Mr. Almond received a letter from defendant stating, "The letter is in reference to your The Hartford's Lifetime Income Builder II – Single rider that is part of your annuity contract referenced above." (November 25 Letter, Ex. I, Dkt. No. 9-2.) Then, in 2013, Mr. Almond discussed the annuity with Dawkins again. Dawkins told him "that the variable annuity would pay the set income payments for both of the Almonds' lives." (Compl. ¶ 12.)

The Almonds received monthly annuity payments. They allege that in October 2016, they received a letter from Edward Jones asking them to sign documents related to the annuity in order to effectuate a custodial ownership change to Edward Jones. There is a letter from defendant, dated December 15, 2015—which defendant concedes is a typographical error and should read December 15, 2016—wherein plaintiffs were notified that Department of Labor rules required the listing of defendant as custodian on the annuity and required a response by February 1, 2017. (December 15 Letter, Ex. J, Dkt. No. 9-2.) Mr. Almond called Dawkins to inquire why the documents made a reference to a "Joint Rider."[3] Dawkins responded "and told Mr. Almond, for the first time, that the contract was only written as a single life contract and only guaranteed income for Mr. Almond's lifetime." Mr. Almond asked Dawkins about his prior statements, and he responded: "How can I remember what I said ten years ago." Mr. Almond then asked Dawkins to have someone from Edward Jones call him so he could formally complain. Dawkins later notified Mr. Almond that Edward Jones's legal department decided not to take action. Mr. Almond and Dawkins could not resolve the matter. (Compl. ¶¶ 13–14.)

In 2017, the Almonds retained counsel to write Edward Jones, inquiring about the misrepresentations Dawkins made about the annuity. In its response, Edward Jones did not adhere to Dawkins's promises or fix the error in the annuity. The Almonds contend that Edward

---

[3] The letter makes no reference to a "Joint Rider." *Id.*

4

Jones is jointly and severally liable for the acts of Dawkins. (Compl. ¶¶ 15–17.)

The Almonds filed a FINRA arbitration claim against Edward Jones on March 24, 2017. The arbitration panel granted Edward Jones's motion to dismiss without prejudice based on a FINRA rule regarding time limits which states: "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim." (Compl. ¶¶ 19–22.)

## II. DISCUSSION

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

As already noted, defendant argues that many of plaintiffs' claims are time-barred. Statutes of limitation and statutes of repose are affirmative defenses that may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013) (citing *Dean v. Pilgrim's Pride Corp*, 395 F.3d 471, 474 (4th Cir. 2005)). While a Rule 12(b)(6) motion "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal citations and quotations omitted).

**B. The Almonds' Claims Are Time-Barred**

Plaintiffs contend that the discovery rule controls and that they did not discover the fraud committed by Dawkins until October 2016. The complaint was filed February 23, 2018. Edward Jones argues that the latest accrual date is March 2007 when Mr. Almond acknowledged receipt of the annuity contract containing the single life rider, consistent with his applications. The court agrees with defendant, and the Almonds' claims are all time-barred under the applicable statutes of limitation or repose.

Counsel for all parties and defendant are familiar with the arguments made in this case and the court's position on those arguments because this case is very similar to a case already decided by this court only with different plaintiffs. Based on the same authority and for the same reasons set forth in *Snapp v. Lincoln Financial Securities Corp.*, No. 5:17-cv-59, 2018 WL 1144383 (W.D. Va. March 2, 2018),[4] which authority and reasons are incorporated herein by reference, the court reaches the same conclusion.

The nearly identical facts and claims warrant reliance on *Snapp*. Just as in *Snapp*, here,

---

[4] The case is on appeal at this time.

the Almonds met with a registered representative, invested their money in a variable annuity based on the representative's recommendation, and the representative made false statements about the annuity. Further, similar to *Snapp*, where plaintiffs often questioned the representative about the disparity between the annuity payments and the representative's statements about the annuity, here, Mr. Almond questioned the representations made by Dawkins at least three times: twice in 2007 and once in 2013. And where the plaintiffs in *Snapp* claimed that they discovered the representative's false statements seven years after investing in the annuity, here, the Almonds allege that they first discovered the representative's statements were false eight years after investing in the annuity. Last, the Snapps and the Almonds received documentation contradicting the representations made by the respective representatives.

The Almonds' claims accrued no later than March 2007–more than ten years before the complaint was filed. Thus, all of plaintiffs' claims are time-barred. The Virginia Securities Act claim has a two-year statute of repose after the transaction on which the claim is based. Va. Code § 13.1-522(D). The Securities and Exchange Act, a claim which plaintiffs appear to abandon, has a five-year statute of repose which begins to run "on the date the parties have committed themselves to complete the purchase or sale transactions." *Carlucci v. Han*, 886 F. Supp. 2d 497, 514 (E.D. Va. 2012) (quoting *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009)). The fraud and constructive fraud claims have a two-year statute of limitations. Va. Code § 8.01-243(A). The unsuitability claim is not an independent cause of action, nor is there an independent cause of action for supervisory liability. The negligence, negligent supervision, and breach of fiduciary duty claims are also barred by a two-year statute of limitations, which is not subject to the discovery rule. Va. Code § 8.01-230. And even if a five-year statute of limitations applied because the Almonds suffered property damage, as plaintiffs contend, the

7

claims are barred. Finally, a breach of contract claim is subject to a five-year statute of limitations from the date of the breach. Va. Code § 8.01-246(2).

Finally, for all the reasons stated in *Snapp*, the plaintiffs' tolling arguments for reasons of obstruction by defendant, equitable estoppel, and/or continuing representation by Dawkins are rejected.[5] The Almonds' claims are time-barred.[6]

### III. CONCLUSION

For the foregoing reasons, the court will grant defendant's motion to dismiss.

An appropriate order will follow.

Entered: March 28, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[5] The Almonds ask the court in their opposition memorandum to grant leave to amend if it finds that the complaint fails to state a claim. (Pls.' Opp'n to Mot. to Dismiss 22, Dkt. No. 14). This is not a proper motion to amend, and no motion for leave to amend has been filed; in any event, the request for leave to amend is denied as the claims are time-barred. *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017).

[6] The court does not condone the alleged conduct of Dawkins in making this ruling. It merely finds that the claims were not timely made.